# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GABRIEL RIVERA,<br>    Plaintiff, | :<br>:<br>: |
| v. | : Civil No. 3:18CV143 (AWT) |
| | : |
| NANCY A. BERRYHILL,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | :<br>:<br>:<br>: |

## **ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff Gabriel Rivera appeals the Commissioner's final decision denying the plaintiff's application for supplemental security income ("SSI") benefits pursuant to 42 U.S.C. § 405(g) of the Social Security Act.

The plaintiff filed a motion for reversal or remand, contending that the Administrative Law Judge ("ALJ") "1) failed to develop the record and to procure and exhibit evidence that was in the exclusive possession of the Social Security Administration; 2) failed to properly evaluate Mr. Rivera's credibility, citing factors attributable directly to his impairments and not to failures of credibility; and 3) failed to properly formulate Mr. Rivera's Residual Functional Capacity [("RFC")], leaving out several important factors." Pl.'s Mem. to Reverse ("ECF No. 19-1") at 2.

The Commissioner filed a motion for an order affirming the Commissioner's decision, maintaining that "substantial evidence supports the Commissioner's final decision that Plaintiff was not disabled from his April 11, 2014 SSI application date through January 30, 2017, the date of the Commissioner's decision." Def.'s Mot. to Affirm ("ECF No. 22") at 1.

For the reasons set forth below, the court concludes that the ALJ applied the correct legal principles and that the ALJ's findings are supported by substantial evidence. Thus, the Commissioner's final decision is being affirmed.

I. **Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial

evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a mere scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258. Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II. Discussion

### A. Duty to Develop the Record

#### 1. The Prior SSI Claim Record

The plaintiff contends that the ALJ had a duty to procure the plaintiff's prior SSI records because 1) "there exists evidence that shows Mr. Rivera's disabling conditions" and 2)

3

"continued disability reviews during that time period showed continuing disabling impairments." ECF No. 19-1 at 12.

The defendant maintains that 1) the defendant's previous claim benefits were suspended in February 2010, over four years prior to filing the April 2014 SSI application; 2) SSI is only payable starting one month *after* the application is filed; and 3) the ALJ has discretion to determine whether evidence is adequate to make a disability determination and how best to resolve insufficiency. See ECF No. 22 at 5.

The regulations state: "[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary . . . ." See 20 C.F.R. § 416.912(b)(1). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). A "[c]omplete medical history means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application." 20 C.F.R. § 416.912(b)(1)(ii). The ALJ has discretion to "determine the best way to resolve [an] inconsistency or insufficiency." 20

C.F.R. § 416.920b(b)(2). Moreover, "the earliest month for which we can pay you benefits is the month following the month you filed the application". 20 C.F.R. § 416.335. "[W]e cannot pay you for the month in which your application is filed or any months before that month." Id.

In DeChirico v. Callahan, 134 F.3d 1177 (2d Cir. 1998), the court held that the ALJ was not required to requisition or subpoena SSI records for a claim existing prior to incarceration where the plaintiff (1) "was represented by counsel at the administrative proceedings", (2) "the fact of his impairment was not in dispute," and (3) "counsel offered no other reasons that the ten-year old file might be relevant" other than to state that "there is material in" the plaintiff's "previous file that may be useful to the present case." DeChirico, 134 F.3d at 1177, 1179, 1183-85 (The Commissioner also relied "in part on Social Security Administration guidelines providing that 'an ALJ May Not Need the Prior Claim File' when '[a]t least four years have elapsed between the date of the prior notice of initial determination and the date of the new application.' Social Security Administration Office of Hearings and Appeals, *HALLEX: Hearings, Appeals and Litigation Law Manual* [], I-2-110D (June 1994).").

Here, as in DeChirico, the plaintiff filed his application approximately four years after his previous benefits were

5

discontinued due to incarceration. The plaintiff was represented by counsel as of December 2, 2015, five months prior to the administrative hearing held on May 4, 2016; only his limitations are disputed, not corresponding impairments; and the stated reason for obtaining the prior records is to demonstrate continuing disabling impairments during the *prior* claim period. The plaintiff fails to provide "a reason to believe that development of an earlier period is necessary" or point to an obvious gap in the record that precludes a fair determination in this case.

Therefore, the court finds that the ALJ did not abuse his discretion on this issue, and the plaintiff's motion to reverse or remand on this ground is being denied.

## 2. Dr. Perrino's Medical Source Statement

The plaintiff contends that the ALJ should have obtained the medical source statement ("MSS") mentioned in a December 10, 2014 treatment note by Dr. Phillip Perrino. The plaintiff notes 1) that counsel appeared one year later; 2) that it is unclear if or how the state agency examiner reviewed the MSS; and 3) that *if* the ALJ had the MSS, he needed to apply the factors to the doctor's opinion and seek a medical expert's clarification of the limiting effects of glaucoma and mental and intellectual effects *if* necessary. ECF No. 19-1 at 12-13.

The defendant maintains 1) that it is unclear who asked Dr. Perrino to prepare the MSS; 2) that the ALJ satisfied his duty to develop the record by requesting Dr. Perrino's medical records and an MSS from Royal Vision Associates on January 8, 2015; 3) that the records were received on January 9, 2015, without the MSS; 4) that the burden of proving disability rests on the plaintiff; 5) that the plaintiff was represented by counsel as of December 2, 2015, and his counsel could have obtained the MSS and submitted it to the ALJ prior to the administrative hearing held on May 4, 2016, and also submitted it to both the Appeals Council and this court; and 6) that the record was adequate for, and substantial evidence supported, the ALJ's determination. See ECF No. 22 at 6-7.

In Janes v. Berryhill, 710 F. App'x 33, 34 (2d Cir. 2018), the court held that the ALJ was not required to develop the record further where evidence was "adequate for [the ALJ] to make a determination as to disability." (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). The regulations state:

> (1)  . . . . In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (see § 416.913). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence. When

7

you submit evidence received from another source, you must submit that evidence in its entirety . . . .

(2) Completeness. The evidence in your case record must be complete and detailed enough to allow us to make a determination or decision about whether you are disabled or blind.

20 C.F.R. § 416.912(1)-(2). See 42 U.S.C. § 423 (d)(5)(A); 20 C.F.R. § 416.912(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987) ("This allocation of burdens of proof is well within the Secretary's 'exceptionally broad authority' under the statute. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so.") (citation omitted).

The ALJ wrote:

Philip M. Perrino, OD, at Royal Vision Associates, confirmed a diagnosis of glaucoma on May 6, 2014 (Ex. 4F, Pg. 2). On May 13, 2014, the claimant's corrected vision was 20/25 in the right eye and 20/25 in the left eye (Ex. 5F, Pg. 7). The glaucoma was listed as moderate during a follow-up examination on June 24, 2014 (Ex. 4F, Pg. 5; *see also* Ex. 4F, Pg. 6, notes dated December 10, 2014). On December 10, 2014, Dr. Perrino's notes indicate that he "filled out a disability form indicating no disability (except for aviation/military)" (Ex. 4F, Pg. 6). It is noteworthy that counsel did not submit this form for the record. Dr. Perrino further noted that the claimant was still having difficulty self-administering the eye drops: the claimant had "gone through 200 drops of Dorzolamide in 30 days" *(Id.; see also* Ex. 5F, Pg. 10).

More recently, on February 26, 2016, the claimant informed Thomas M. Arnista, OD, at Royal Vision that he was experiencing "a pulsing pain" at the right eye that lasted, coming and going, for about a week (Ex. 5F, Pg. 1). On that date, Dr. Arnista noted an increase in the claimant's IOP that was greater on the right side than the left (Ex. 5F, Pg.

> 2). He advised the claimant to continue with the same course of medicine *(Id.)*.
>
> Although Dr. Perrino indicated that the claimant has no disability due to a visual impairment, **the undersigned gives the claimant the benefit of the doubt and finds that he must avoid work in outside areas in bright sunlight or at night and the work should not require near (20 inches) or far (20 feet) visual acuity**.

R. at 36 (emphasis added). The ALJ also wrote:

> "[T] the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he must avoid work in outside areas in bright sunlight or at night; the work should not require near or far visual acuity; he is limited to occasional interaction with supervisors and coworkers, and the interaction should be brief and superficial; he must avoid jobs that require teamwork or close collaboration with others; he must avoid working with the public; the job must require less than 30 days to learn and involve only routine, repetitive tasks; the job should not require strict production requirements; the job should not require more than occasional oral communication, it should require no written communication, and it should require no communication in English.

R. at 33.

Here, the ALJ supported his conclusion that glaucoma did not disable the plaintiff with Dr. Perrino's and Dr. Arnista's treatment notes, which found the condition "moderate", corrected to 20/25, and medically managed. The ALJ did not solely rely on Dr. Perrino's "no disability" determination; he incorporated the plaintiff's testimony (difficulty seeing things at a distance and sensitive to light (R. at 90)) and gave the plaintiff "the benefit of the doubt" when determining the RFC ("must avoid work in outside areas in bright sunlight or at night" and "should not

9

require near or far visual acuity"). Also, the plaintiff was represented as of December 2, 2015, giving him enough time to procure and present the missing MSS to the ALJ before, at, or after the administrative hearing held on May 4, 2016. Here, as in Janes, the ALJ was not required to develop the record further because the evidence was complete and detailed enough to make a determination as to disability. Furthermore, the plaintiff fails to demonstrate that he was prejudiced by the ALJ's failure to procure this MSS, and substantial evidence supports the ALJ's findings.

Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

### 3. Dr. Mora de Jesús's Findings

As to the ALJ's finding that Dr. de Jesús "provided no opinion on functional limitations to help inform the claimant's residual functional capacity", the plaintiff contends that "the ALJ, noting a lack of opinion on functional limitations, had a duty to further develop the record", and that [r]emand is warranted when the records on which the ALJ relied in no way "shed any light on [plaintiff's] residual functional capacity." ECF No. 9-1 at 14 (citing Guillen v. Berryhill, 697 F. App'x 107, 108 (2d Cir. 2017) (involving a treating physician and medical records that did not "shed any light on [plaintiff's] residual functional capacity") and Dennis v. Colvin, 195 F.

Supp. 3d 469, 474 (W.D.N.Y. 2016) (suggesting that the ALJ may not connect a diagnosis to a corresponding limitation where that link is missing from the medical records).

The defendant maintains that the "ALJ properly considered Dr. Mora de Jesús' evaluation as well as other evidence in the record and reasonably concluded that Plaintiff could perform a range of simple work with limited interaction with others, no strict production quotas, no written communication, and limited oral communication." ECF No. 22 at 8-9.

The ALJ wrote:

> Rafael Mora de Jesús, PhD, conducted a consultative mental status examination of the claimant on September 30, 2014. The claimant told Dr. de Jesús that he is slow in learning and that he did not know how to talk well, read, or write (Ex. 2F, Pg. 1). He reported that he was in special education classes during his school years and that he never learned how to read or write. The claimant obtained a GED through adult education classes *(Id.).* At the time of the evaluation, the claimant was living with his mother (Ex. 2F, Pg. 2).

> Dr. de Jesús observed that the claimant's behavior was within normal limits (Ex. 2F, Pg. 2). His mood was anxious while his affect was bright. The claimant was alert and fully oriented *(Id.).* Dr. de Jesús administered the Escala de Inteligencia Weschsler para Adultos, 3rd ed. (EIWA-III), which measures an individual's overall cognitive capacity, translated and standardized for a Puerto Rican population (Ex. 2F, Pg. 3). The claimant obtained a verbal IQ score of 74, a performance IQ score of 90, and a full-scale IQ score 81. The full-scale IQ score placed the claimant in the below average range of cognitive functioning *(Id.).* According to Dr. de Jesús, the claimant's scores show that he is "an individual who can express his cognitive abilities significantly better through the manipulation of objects as opposed to through verbal means" (Ex. 2F, Pg. 4).

Dr. de Jesús found that the claimant's primary problems were with his language skills (Ex. 2F, Pg. 4). He never really learned to read or write and his math skills were limited. Throughout testing, the claimant had difficulties with recall of words. He appeared to have a limited vocabulary. In addition, the claimant's upbringing "was characterized by much instability, conflict, parental abandonment, and poverty" *(Id.)*. Dr. de Jesús assessed learning disorder (language and math related) and language disorder (Ex. 2F, Pg. 5).

The Administrative Law Judge finds that Dr. de Jesús report is entitled to moderate weight. His test results and clinical observations are instructive and reliable. However, Dr. de Jesús provided no opinion on functional limitations to help inform the claimant's residual functional capacity.

As for opinion evidence, on October 2, 2014, Dr. Harvey reported for the DDS that the claimant is able to carry out simple tasks, make simple work decisions, and work within a schedule without requiring extra supervision. . . . [He] retains the ability to concentrate for 2 hours while performing simple tasks" (Ex. IA, Pg. 8). In addition, the claimant's "safety awareness is adequate." Lastly, Dr. Harvey believed that the claimant's learning disorder could "impact [his] ability to adapt to work changes and make independent plans" *(Id.)*. Upon reconsideration, Dr. Rogers adopted Dr. Harvey's assessment, but she added that the claimant is "[n]ot suited to work with strict production quotas" but he is able to "work around others" (Ex. 3A, Pg. 8).

The undersigned gives some weight to these DDS assessments. The limitation of the claimant to simple tasks, that is, routine, repetitive work activity, with no strict production quotas is reasonable in light of the record as a whole. **However, the claimant has greater social limitations than acknowledged by the DDS reviewers.** The Administrative Law Judge finds that the claimant should be limited to only occasional, brief, and superficial interaction with supervisors and coworkers, and that he should have no interaction with the public. Moreover, given the language difficulties identified by Dr. de Jesús, the claimant must avoid work that requires more than occasional oral communication and it should require no written communication. The claimant does not understand English; therefore, any work he can perform must not require communication in English.

> ...
> The claimant informed Dr. de Jesús on September 30, 2014, that his main concern was with finding work (Ex. 2F, Pg. 4). However, he was on probation with a criminal record, "which could affect the possibility of his being hired" *(Id.)*. This evidence is significant because it reflects a belief on the claimant's part that he is capable of performing some type of work, but his criminal record would limit his opportunities. In determining questions of disability, "[i]t does not matter whether ... you would be hired if you applied for work" (20 CFR 416.966(a)(3)). Moreover, "[t]he hiring practices of employers" are irrelevant (20 CFR 416.966(c)(3)). Instead, what matters is whether work exists that is within the claimant's residual functional capacity, age, education, and work experience that he can perform. It appears that, if the perceived hurdles of his criminal record were overcome, then the claimant believed that he could perform some type of basic work activity.

R. at 36-8 (emphasis added).

Dr. Mora de Jesús is a consultative psychological examiner, not a treating physician. His report was evidence and provided insight into the plaintiff's RFC, as shown above. The Commissioner has discretion to solicit his opinion. See 20 C.F.R. § 404.1519. If the plaintiff had an objection to the consultative psychological examiner or his evaluation, that objection could have been made at or before the hearing. See 20 C.F.R. § 404.1519j. Also, Dr. Lindsay Harvey and Dr. Kelley Rogers read Dr. de Jesús's report and incorporated it into their findings as to the plaintiff's work limitations, which the ALJ considered. The plaintiff's challenge on this ground lacks merit, and the motion to reverse or remand on this ground is being denied.

## B. The Plaintiff's Credibility

The plaintiff contends that the AJL "failed to properly evaluate Mr. Rivera's credibility [as to his statement that he cannot remember even the simplest of tasks and his report of SSI for mental condition developed in prison], citing factors attributable directly to his impairments and not to failures of credibility" and that the "case should be remanded so that the ALJ can base his credibility findings on Mr. Rivera's actual statements in the context of his learning disabilities." ECF No. 19-1 at 2, 14-16.

The defendant maintains that the ALJ "considered the record as a whole and reasonably found that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record as a whole." ECF No. 22 at 9.

> [T]he ALJ has "the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." McLaughlin v. Secretary of Health, Ed. and Welfare, 612 F.2d 701, 704 (2d Cir. 1980) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are "patently unreasonable." Lennon v. Waterfront Transport, 20 F.3d 658, 661 (5th Cir. 1994).

Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997). "Objective medical evidence . . . is a useful indicator to assist [] in making reasonable conclusions about the intensity and persistence of [] symptoms and the effect

14

those symptoms . . . may have on [] ability to work", as are activities of daily living. 20 C.F.R. §§ 416.929(c)(2), (c)(3)(i).

The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The Administrative Law Judge is not persuaded by the claimant's testimony that he cannot remember even the simplest of tasks. He testified that even if he learns a simple task through repeated demonstrations one day, he must be provided with the same demonstrations the following day. He at first ... testified that he does cannot remember how to perform simple tasks at home, such as cook, clean, or vacuum. He finally acknowledged that he has learned a little bit to perform simple tasks. This testimony is not consistent with the medical evidence and other evidence in the record. For example, as discussed earlier, the claimant is able to manage and attend to his personal care (Ex. 3E, Pgs. 1-2: he is able to shower and brush his teeth; *see also* Ex. 2F, Pg. 2: "[h]e has no difficulties with his self-care skills"). Moreover, he previously reported that he is able to make simple meals (Ex. 3E, Pg. 3). In contrast to his hearing testimony, he acknowledged during the consultative mental status examination that he "helps [with] cleaning and taking out the garbage" (Ex. 2F, Pg. 2). The record simply does not support the claimant's statements of extreme functional limitations.
>
> The claimant received SSI benefits in the past, but the benefits stopped when he became incarcerated. Oddly, then, when he saw Dr. Seely on May 30, 2014, the claimant reported that he received SSI for a mental condition that he developed while *in* prison (Ex. 3F, Pg. 1).

15

> The claimant informed Dr. de Jesús on September 30, 2014, that his main concern was with finding work (Ex. 2F, Pg. 4). However, he was on probation with a criminal record, "which could affect the possibility of his being hired" *(Id.).* This evidence is significant because it reflects a belief on the claimant's part that he is capable of performing some type of work, but his criminal record would limit his opportunities. In determining questions of disability, "[i]t does not matter whether ... you would be hired if you applied for work" (20 CFR 416.966(a)(3)). Moreover, "[t]he hiring practices of employers" are irrelevant (20 CFR 416.966(c)(3)). Instead, what matters is whether work exists that is within the claimant's residual functional capacity, age, education, and work experience that he can perform. It appears that, if the perceived hurdles of his criminal record were overcome, then the claimant believed that he could perform some type of basic work activity.
>
> During the hearing, the claimant testified that he tried to find work after leaving prison, but because he cannot read or write, and because he knows little to no English, he was not able to complete his applications. Again, this evidence is significant because it shows that he believes that he would be able to perform some sort of work if he were able to manage the language barrier. There is no evidence on record indicating that the claimant has sought out any type of social services to assist him in pursuing employment opportunities and in applying for suitable jobs.

R. at 38.

Here, as noted in Section III.A.3 above, the ALJ reviewed Dr. Mora de Jesús's and Dr. Harvey's and Dr. Rogers's findings. He also examined the plaintiff's activities of daily living as reported at the hearing and as reported by others. As noted by the defendant, the plaintiff produces no medical evidence to support his contention that the plaintiff's impairments caused confusion or

16

increase the possibility of misstatements.  Moreover, even if the plaintiff had presented substantial evidence to support his position, where the ALJ's decision also is supported by substantial evidence, that decision must be sustained.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).  There is no basis here to disturb the ALJ's credibility finding.

Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

**C. RFC**

The plaintiff contends that the ALJ failed to properly formulate the plaintiff's RFC by leaving out no oral communication, off-task and production limitations.  ECF No. 19-1 at 16-17.

The defendant maintains that the ALJ's RFC finding is supported by substantial evidence and that the plaintiff fails to prove limitations greater than those assessed in the RFC. ECF No. 22 at 12.

Here, there is substantial evidence that the plaintiff was able to communicate orally in Spanish (i.e., he testified with an interpreter at the administrative hearing; and Dr. Mora de Jesús noted that he socialized with family members, shopped, had only a mild problem with articulation, spoke in response to direct questions, established a rapport, and responded to questions appropriately) and any limitations in this area were

17

accounted for in the RFC.  The plaintiff provides no evidence that the plaintiff would be off task more than 10% of the time.  Substantial evidence (including Dr. Mora de Jesús's and Dr. Harvey's and Dr. Rogers's opinions) supports the ALJ's finding that the plaintiff had the RFC for a range of simple work with no strict production quotas and limited interaction and communication with others.  Finally, as noted by the defendant, the plaintiff fails to articulate which additional production limitations should be included and what evidence supports the more specific limitations.  Moreover, even if the plaintiff produced substantial evidence that the plaintiff could not communicate orally, was off task more than 10% of the time, and required more specific production limitations, where substantial evidence also supports the ALJ's determination, that determination must be affirmed.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).  Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (ECF No. 19) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 22) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 21st day of March 2019, at Hartford, Connecticut.

>                    /s/AWT
>              Alvin W. Thompson
>           United States District Judge